## SUPREME COURT.

### WILSON and others agt. FERGUSON and LAMONT.

An *assignment* made for the benefit of creditors, which authorizes the assignee to sell and dispose of the property assigned, "*upon such terms and conditions as in his judgment may appear best and most for the interest of the parties concerned,*" is not void on its face.

Those words do not necessarily import a discretion to sell on *credit*. And the familiar principle, that in the interpretation of instruments the law will never, by implication, attach an unlawful meaning, or coerce an unlawful trust, forbids

such a construction. *Illegality* should never be presumed. To vitiate the instrument, it must be an express power to sell on credit.

Although no *subsequent* illegal, or fraudulent acts of the assignor, or the assignee, can invalidate an assignment valid on its inception, yet, where the question is still unsettled, whether the whole transaction from the commencement was fraudulent, subsequent, conjointly with previous and simultaneous facts, may be allowed to show the *intent*, and prove the validity or invalidity of the assignment.

In this case, the misrepresentations of the assignor as to his circumstances, made at the time of purchasing the bill of goods, for which judgment was obtained in favor of the plaintiffs herein, taken in connection with other suspicious circumstances, and the time when the assignment was made, &c., *held*, sufficient to invalidate the assignment.

In all these voluntary assignments there must appear an honest intention, free from all suspicion; there must be no attempt to coerce creditors; nothing reserved for the benefit of the debtor; there must be no intermeddling by the latter with the property; there must be an actual, *bona fide*, continued change of possession; and the assets must be converted into cash without delay.

*New-York Special Term*, 1854.—This is an action to set aside an assignment, executed by Ferguson to Lamont, in trust, for the benefit of creditors, bearing date 29th October, 1851, at Harpersfield, in Delaware county, where Ferguson was engaged in business as a merchant, and where Lamont was employed as a clerk in the law office of S. A. Givens, Esq.

The plaintiffs are judgment creditors of Ferguson in the amount of $561.06, on a judgment recovered against him 18th Dec., 1851, for goods sold to him about the 8th May, 1851, at six months' credit, and also on a judgment recovered against him 22d Nov., 1851, by John C. Tucker, for $65.33, which Tucker afterward, and before the commencement of this action, assigned to the plaintiffs.

A. BECKER, *for plaintiffs*.

S. A. GIVENS, *for defendant*.

CLERKE, Justice. It is urged, on behalf of the plaintiffs, that the assignment is void on its face, because it authorizes the assignee to sell and dispose of the property assigned " *upon such terms and conditions as in his judgment may appear best and most for the interest of the parties concerned.*" This is the only ground upon which it can be pretended, with the

slightest degree of plausibility, that the instrument is void on its face.

Since the decision in the court of appeals in *Baring agt. Griffin*, (2 *Com.* 365,) it is undisputed that, where the assignee has the option, by the express language of the instrument, to sell for cash *or upon credit*, the whole assignment is upon its face fraudulent and void. In *Shufeldt agt. Abernethy*, in the New-York superior court, the language of the clause was precisely the same, word for word, as that to which objection is taken in the present case. The word "*credit*" did not appear in any part of the instrument; but the judges of that court at general term held, that "in meaning there is not the slightest difference. Terms and conditions," they say, "can only mean terms and conditions of payment." The high reputation of that court for ability and learning gives to this, as well as to all its decisions, very great weight; but I am constrained to differ from the learned judges–in the construction which they have given to this clause. I cannot believe that it necessarily imports a discretion to the assignee to sell on credit. The familiar principle that, in the interpretation of instruments, the law will never, by implication, attach an unlawful meaning, or coerce an unlawful trust, forbids such a construction.

I agree with Judge MASON of this court, in *Tyler agt. Birdsall*, that "the court will never imply a power to sell on credit from any loose, ambiguous expression, where there is reasonable doubt as to its meaning." To vitiate the instrument, it must be an express power to sell on credit. It will be intended that the power was conferred to sell only on legal terms and conditions,—for cash, and not on credit, which would be illegal. But it is said that in instruments containing this clause, "if you take away the power to sell on credit, no *discretion* remains; since there can be no exercise of a discretion as to the terms and conditions of a sale, when it is for cash, and cash alone, that the sale can be made:" that is, the clause admits of no other possible construction, but a discretion to sell on credit, and in a sale of property it is thus assumed, there can be no terms and no conditions, except those which have a reference

Wilson and others agt. Ferguson and Lamont.

to credit. But it cannot be, that credit is the only circumstance connected with the discharge of the duties of an assignee in the disposition of the property, importing the idea of terms and conditions. It may be expedient that it should be sold either in gross or in parcels, or both; that it should be taken away by the purchaser at once, or be allowed to remain on the premises for a reasonable time to suit his convenience; or that a certain per centage of the purchase money should be deposited immediately after the sale; or that the whole may be paid immediately on delivery. Besides, the words " terms and conditions," when regarded in connection with other parts of the instrument, may, without any violence to the language, be taken to mean the *manner* in which the trust in this respect was to be performed : for example, that the sale may be private or public, in the store or elsewhere, including innumerable details in the proceeding, which must from necessity be left to the discretion of the assignee.  ·

But when we find that, in addition to the words quoted, and as a continuation of the sentence, the assignee is directed " to convert the same into cash," I think to imply an intention to give the assignee an option to sell on credit would be actually reversing the rule forbidding us to deduce an illegal intention from an instrument, when from its whole language and tenor it is susceptible of a legal meaning. Illegality should never be presumed.

For these reasons, I consider this assignment valid *on its face.*

The next question to be considered is, whether the extrinsic facts show that the assignment was made in bad faith, and with an intent to defraud creditors.

For this purpose we are not confined to facts previous to or simultaneous with the execution of the assignment; but we may take subsequent facts into consideration, when they are capable of explaining the motives or intent actuating the parties at the time of the transaction. Doubtless, no subsequent illegal, or fraudulent acts of the assignor, or the assignee, can invalidate an assignment valid in its inception; but, where the

question is still unsettled, whether the whole transaction from the commencement was fraudulent, subsequent, conjointly with previous and simultaneous facts are well calculated to show the intent, and prove the validity or invalidity of the assignment.

The defendant, Ferguson, purchased the goods for which the plaintiffs obtained judgment against him, on the 8th of May, 1851, at a credit of six months, making the bill due on the 8th of November. At the time he purchased the goods he told Simpson, the plaintiff's clerk, who made the sale, " that he was making money, and was doing better at Harpersfield than he had been at West-Kill." And it was in consequence of these representations that the plaintiffs sold him the goods. How does this agree with the fact proved in the case, and urged by the defendants' counsel himself, that Ferguson had been embarrassed for two years before the assignment, and constantly pressed for money. Now, when we take these circumstances and this palpable misrepresentation in connection with the time at which the assignment was made, the 28th Oct., 1851—only a few days before the bill to the plaintiffs became due—I think it may well be regarded as throwing some light on the intent, inducing the assignment. In addition to this, we find that the assignment was made to a young man twenty-two years of age, a law student, a few rods from Ferguson's store, with little or no property or pecuniary responsibility; that there was only a mere formal change of possession; that Ferguson continued to attend the store, to make sales, in some instances on credit; and that he was employed to assist in the general management of affairs and collection of debts; that the goods continued to be retailed while there there was no actual change in the management of the business. His remark, too, soon after the assignment, to Sternbergh, an acquaintance and customer, should not be forgotten. The latter asked him, on seeing that the store had more goods than usual, "if he had been filling up; he said, ' No, I have failed.' I then asked him, if Bellinger, a creditor, was crowding him; he said, ' No, that it was a matter of my own getting up. I do not mean to work ten or twelve years for nothing.' "

At last the goods were sold at auction, about ten or twelve weeks after the execution of the assignment; Ferguson, in the mean time, by his counsel interposing various delays by adjournment and appeal, to Tucker and to the plaintiffs, in their efforts to obtain judgments against him for claims, which he does not pretend to dispute, or that he had ever any reason to dispute.

Assignments by debtors are not regarded with indulgence by the law; experience, and the requirements of a great commercial community, show that they should rather be restricted than encouraged. But it is time that no further latitude should be given to enable debtors to make an unequal disposition of their assets among their creditors. The law certainly gives a right of preference; but a wholesome policy demands that this right should be watched with strict vigilance, and its exercise restricted to the most narrow limits. Confidence is the main pillar of commerce, and the courts should be exceedingly careful not to sanction any practice calculated to impair it. The laxity, which unfortunately too much prevails in commercial and financial circles, and which has recently produced such ruinous effects, and still threatens to produce more, should be met with the determined opposition of our courts; and it is with great satisfaction that I have observed the recent tendency of judicial decisions upon this subject.

In all these voluntary assignments there must appear an honest intention, free from all suspicion: there must be no attempt to coerce creditors,—nothing reserved for the benefit of the debtor: there must be no intermeddling by the latter with the property: there must be an actual, *bona fide*, continued change of possession; and the assets must be converted into cash without delay.

There has been a sufficient departure from these principles in the present case to warrant me in pronouncing the assignment void, at least as against the plaintiffs.

Judgment for plaintiffs with costs; a receiver to be appointed; the plaintiffs to have a priority to the amount of their claim; and the assignee, Lamont, to deliver over under oath.